UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TUDOR INSURANCE COMPANY, a
New Hampshire corporation,

        Plaintiff,

v.

HELLICKSON REAL ESTATE, et al.,

        Defendants.

CASE NO. C10-5925BHS

ORDER

This matter comes before the Court on Defendants Hellickson Real Estate; Hellickson.com, Inc., a Washington corporation; The Short Sale Company, LLC, a Washington limited liability company; Perfect Fit Homes; Club Wealth, a Washington limited liability company; and Michael and Tara Hellickson's (collectively "Hellicksons") motion for summary judgment (Dkt. 32), the Hellicksons' motion to strike (Dkt. 39), and Plaintiff Tudor Insurance Company's ("Tudor") cross-motion for summary judgment (Dkt. 36). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby grants Tudor's motion and denies the Hellicksons' motions for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On December 21, 2010, Tudor filed a complaint for declaratory relief against the Hellicksons. Dkt. 1. On January 26, 2011, the Hellicksons answered and asserted

ORDER - 1

counterclaims for breach of contract, bad faith insurance conduct, violations of various Washington insurance regulations, and a violation of the Washington Consumer Protection Act ("CPA"), RCW Chapter 19.86. Dkt. 9.

On June 24, 2011, the Hellicksons filed a motion for summary judgment. Dkt. 32. On July 15, 2011, Tudor responded and filed a cross-motion for summary judgment. Dkt. 36. On July 22, 2011, the Hellicksons replied to Tudor's response and included a motion to strike certain material submitted by Tudor. Dkt. 39. On August 8, 2011, the Hellicksons responded to Tudor's motion. Dkt. 40. On August 12, 2011, Tudor replied to the Hellicksons' response. Dkt. 43.

## II. FACTUAL BACKGROUND

In August 2010, Tara Hellickson ("Tara") completed and submitted applications for an insurance quote from Tudor on an Errors & Omissions Liability Policy. Dkt. 34, Declaration of Tara Hellickson ("Tara Decl."), ¶ 2. On August 12, 2010, Tara submitted a Real Estate Professionals Errors and Omissions Liability Application ("E&O Application"). *Id.*, Exh. A at 1-4. On August 24, 2010, Tara submitted a Real Estate Agent & Brokers Supplement Insurance Application for Errors & Omissions insurance ("Supplement Application"). *Id.*, Exh. A at 5-6. Tara declares that she filled out the applications "to the best of [her] knowledge" and that she believed all the information she provided was "correct." *Id.*, ¶ 2. She also declares that she filled out the applications in "good faith" and that she did not intend "to mislead or be deceptive to Tudor." *Id.*

The E&O Application requested information regarding any claims or potential claims against the applicant or others listed in the application. The questions were as follows:

> 31) Have any claims (including violations of fair housing laws) been made against your firm, any predecessor firm or anyone indicated in Question 5 or 6?

> 32) Are you aware of any act, error, omission or other circumstances, which might reasonably be expected to be the basis of claim or suit against you or anyone indicated in Question 5 or 6?

E&O Application at 4. Tara placed an "X" in the "No" box for both of these questions. *Id*. Tara signed the application as Vice President for Hellickson Real Estate and certified as follows:

> I/we hereby declare that the above statements and particulars are true and that I/we have not suppressed or misstated any material facts and I/we agree that this application shall be the basis of the contract with the Company and that coverage, if written, will be provided on a claims made basis.

*Id*.

The Supplement Application specifically sought information related to investigations by regulatory agencies or professional review boards by requesting information as follows:

> 11. Have you or any member of the firm (including owners, officers, partners or employees) been reprimanded, cautioned, investigated or been involved in any suit or investigatory proceeding by any regulatory agency, professional review board or similar body for actual or alleged violations arising out of professional activities?
> If yes, explain (on a separate sheet) the full details and resolution of any such incident, including the dollar amounts of any fine imposed.

Supplement Application at 2. Tara answered "Yes" to this question and provided an explanation as follows: "ASSOCIATION FINE (MLS) HANDLED THROUGH APPEAL – REDUCED OR DROPPED – NO CLAIMS MADE." *Id*. Tara signed the application as Owner of Hellickson Real Estate, LLC, and certified that "reasonable inquiry has been made to obtain the answers herein which are true, correct, and complete to his/her best knowledge and belief." *Id*. The application also provided that "[a]ll information requested in the application is considered material and important." *Id*.

On August 29, 2010, Tudor issued the Hellicksons' E&O Policy. Dkt. 37, Declaration of Troy A. Biddle ("Biddle Decl."), Exh. 1 ("Policy"). The Policy states that Tudor was providing the Hellicksons' coverage "in reliance upon the statements in the

ORDER - 3

Insured's application attached hereto and made a part hereof . . . ." *Id*. at 4. The Policy's "OTHER CONDITIONS" provision, section "G. APPLICATION" states "by acceptance of this policy, the Insured agrees that the statements in the application are true representations [and] that this policy is issued in reliance upon the truth of such representations . . . ." *Id*. at 8.

On September 2, 2010, the Washington Department of Licensing ("DOL") filed a disciplinary proceeding against the Hellicksons. Biddle Decl., Exh. 3 at 5-7. On September 29, 2010, the Hellicksons tendered defense of the disciplinary proceeding to Tudor. Tara Decl., ¶ 4. On November 8, 2010, Tudor acknowledged the Hellicksons' claim. *Id*., Exh. B. On December 15, 2010, Tudor rescinded the E&O Policy based on intentional misrepresentations in the insurance applications. Biddle Decl., Exh. 6 ("Rescission Letter").

The Rescission Letter lists several complaints made by the Hellicksons' clients to the DOL ranging from October 2009 to July 2010. *Id*. at 3-5. Some of the complaints resulted in the DOL sending letters to the Hellicksons and their attorney, Mr. Doug Tingvall, in which the DOL investigator stated that "[i]t appears from our analysis that grounds may exist to pursue administrative action against you for possible misrepresentation, negligence, incompetence and/or malpractice." Dkt. 38, Declaration of Karen Jarvis, Exhs. A-D, F, H ("DOL Letters"). The investigator further stated that the file "will be forward[ed] to the Legal Section for further consideration. The case file will be reviewed by that unit to determine if the evidence obtained warrants pursuing administrative action on behalf of the State of Washington." *Id*.

Tara declares that the DOL administrative action was a "complete surprise to [her] and her husband." Tara Decl., ¶ 3. She also declares that, when she filled out the applications for insurance, she "thought [the] issues with the [DOL] had been resolved." *Id*., ¶ 2.

### III. DISCUSSION

**A.     Hellicksons' Motion to Strike**

The Hellicksons move to strike portions of the Biddle Decl., the Declaration of Karen Jarvis, and the Declaration of Robin Jones on the basis that the documents contain information that is irrelevant, inadmissible, and highly prejudicial. Dkt. 39 at 11-12. The Court will not explicitly strike material, but it will disregard material that does not relate to the issues before the Court. Therefore, the Court denies the Hellicksons' motion and will set forth the facts that the Court relies upon to render decisions on the parties' motions.

**B.     Summary Judgment**

The Hellicksons move for summary judgment on the issue of whether Tudor breached its duty to defend the Hellicksons in the DOL disciplinary proceeding. Dkt. 32. Tudor moves for summary judgment on the issue of whether it was proper to rescind the E&O Policy and requests dismissal of all of the Hellicksons' counterclaims. Dkt. 36.

**1.     Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if

there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson,* 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### 2. Rescission

"Contract rescission is an equitable remedy in which the court attempts to restore the parties to the positions they would have occupied had they not entered into the contract." *Bloor v. Fritz*, 143 Wn. App. 718, 739 (2008) (citing *Hornback v. Wentworth*, 132 Wn. App. 504, 513 (2006), *review granted*, 158 Wn.2d 1025 (2007)). With regard to an insurance contract, rescission is permitted where

> (1) [the insured] represented certain information as truthful to [the insurer] during the negotiation of the insurance contract, (2) those representations were untruthful; that is, they were misrepresentations, (3) the misrepresentations were material, and (4) they were made with the intent to deceive [the insurer].

*Cutter & Buck, Inc. v. Genesis Ins. Co.*, 306 F. Supp. 2d 988, 997 (W.D. Wash. 2004). With regard to Tudor's burden of proof on the issue of rescission, "[m]isrepresentation in

obtaining insurance must be proved by clear, cogent, and convincing evidence." *Queen City Farms v. Cent. Nat'l Ins. Co. of Omaha*, 126 Wn.2d 50, 97 (1994) (citing *Beckendorf v. Beckendorf*, 76 Wn.2d 457, 462 (1969)).

### a. Representations

In this case, the Hellicksons represented that no claims, including violations of the fair housing law, had been made against them and that they were not aware of any act, error, omission or other circumstances which might reasonably be expected to be the basis of claim or suit against them. *See* E&O Application. They also represented that the full details of any reprimand, caution, investigation, or investigatory proceedings by a regulatory agency was a fine by a listing service that was reduced or dropped and no claims were made. *See* Supplement Application. The Hellicksons do not contest that they made these representations. Therefore, the Court finds that the Hellicksons represented certain information as truthful to Tudor in the applications for the Policy.

### b. Untruthful

Tudor argues that the Hellicksons' representation were untruthful because of the complaints made to the DOL and the DOL investigations. Dkt. 43 at 4-5. The Hellicksons received letters from the DOL investigator that stated "[i]t appears from our analysis that grounds may exist to pursue administrative action against you for possible misrepresentation, negligence, incompetence and/or malpractice." *See* DOL Letters. The Hellicksons offer no evidence or argument regarding the existence of the DOL complaints or the DOL Letters. Therefore, the Court finds that the Hellicksons' representations that no complaints against them had been filed or that no regulatory investigations against them had been conducted were untruthful.

### c. Material

Three separate means exist for establishing the element of materiality. First, a "representation made in conjunction with an insurance policy application or negotiation is

material if the representation influenced the insurance company's decision to issue the coverage." *Cutter & Buck*, 306 F. Supp. 2d at 1003. Second, "[i]nformation is material if the information measures the risk, which is the touchstone of any insurance contract." *Id.* (citing *Verex Assurance, Inc. v. John Hanson Savings and Loan, Inc.*, 816 F. 2d 1296, 1302 (9th Cir. 1987)). Finally, "when an insurer specifically asks information in regard to a certain matter, the presumption is that the matter is material." *Id.* The presumption of materiality, like the presumption of deceitful intent, is rebuttable by credible evidence, and, where there is conflicting evidence, the question of materiality is one for the jury. *See, e.g., Olson v. Bankers Life Ins. Co. of Nebraska*, 63 Wn.2d 547, 552 (1964).

In this case, Tudor argues that the Hellicksons' representations were material to the issuance of the Policy. Dkt. 43 at 3-4. Tudor asserts that the applications specifically requested information regarding disciplinary investigations and that the Supplemental Application explicitly stated that "[a]ll information requested in the application is considered material and important." *Id.* These applications are clear, cogent, and convincing evidence that entitles Tudor to the rebuttable presumption that information regarding disciplinary investigations was material to the issuance of the Policy. On the contrary, the Hellicksons have failed to provide any credible evidence to rebut this presumption. They do, however, argue that "a reasonable fact-finder could infer from Tudor's failure to [investigate the listing service's action that the Hellicksons did disclose] that the information was not material." Dkt. 39 at 8. Tudor's failure to investigate an alleged fine by a listing service is not conflicting evidence that a disciplinary investigation by a government agency based on multiple complaints for misrepresentations, negligence, incompetence and/or malpractice would not have been material to the measure of risk for the insurer. Therefore, the Court finds that the information that was requested by Tudor and that was not provided by the Hellicksons was material.

### d. Intent to Deceive

The Washington State Supreme Court has held that "[w]hen a false statement has been made knowingly, there is a presumption that it was made with intent to deceive." *Cutter & Buck*, 306 F. Supp. 2d at 1004 (citing *Music v. United Ins. Co. of Am.*, 59 Wn.2d 765, 769 (1962)). The "presumption is not overcome by the unsupported declaration of the applicant that no such intent existed in his mind at the time." *Day v. St. Paul Fire & Marine Ins. Co.*, 111 Wn. 49, 59 (1920); *see also American Fidelity & Cas. Co. v. Backstrom*, 47 Wn.2d 77, 84 (1955) (presumption "is not overcome by the unsupported denial of the insured."). Moreover,

> [t]he insured's bare assertion that she did not intend to deceive the insurance company is not credible evidence of good faith and, in the absence of credible evidence of good faith, the presumption warrants a finding in favor of the insurance company.

*Ki Sin Kim v. Allstate Ins. Co., Inc.*, 153 Wn. App. 339, 356 (2009). If, however, there is credible evidence that the alleged misrepresentations were made without intent to deceive, then that determination is a question for the jury. *Cutter & Buck*, 306 F. Supp. 2d at 1004.

In this case, the Hellicksons argue that Tudor is not entitled to the presumption that the misrepresentations were made with an intent to deceive because Tudor is unable to prove that Tara's misrepresentations were made knowingly. Dkt. 39 at 8. The only evidence in support of this argument is Tara's declaration in which she asserts that she "thought the issues with the [DOL] had been resolved." Tara Decl., ¶ 2. Consequently, this assertion is an admission that Tara knew that there were complaints filed with the DOL and the subsequent DOL investigations. Therefore, the Court finds that, when she completed the applications, Tara knowingly failed to provide information regarding an investigation by a regulatory agency, which was specific information requested by Tudor.

This finding entitles Tudor to the presumption that the Hellicksons intended to deceive Tudor.

With regard to overcoming this presumption, the only relevant evidence that the Hellicksons have submitted is Tara's declaration. In Washington, however, the presumption in favor of the insurer "is not overcome by the unsupported denial of the insured." *American Fidelity*, 47 Wn.2d at 84. Therefore, the Hellicksons have failed to provide sufficient evidence to rebut the presumption in favor of Tudor on the issue of whether the Hellicksons intended to deceive Tudor. In the absence of credible evidence to the contrary, the presumption warrants a finding in favor of Tudor.

### e. Rescission Conclusion

Based on the analysis above, the Court finds that Tudor has provided clear, cogent, and convincing evidence for each element of rescission. The applications show that the Hellicksons made certain representations, the DOL letters show that the representations were untruthful, the applications show that the requested information was material, Tara Hellickson's declaration shows that she knew of the complaints and investigations, and the Hellicksons have failed to submit evidence to create a question of fact as to the element of an intent to deceive. Therefore, the Court grants Tudor's motion for summary judgment on this issue and concludes, as a matter of law, that Tudor was entitled to rescind the Policy.

### 3. Duty to Defend

The insurer's duty to defend the insured is one of the main benefits of the insurance contract. *Safeco Ins. Co. of America v. Butler*, 118 Wn.2d 383, 392 (1992). "If the insurer is unsure of its obligation to defend in a given instance, it may defend under a reservation of rights while seeking a declaratory judgment that it has no duty to defend." *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wn.2d 751, 761 (2002) (citing *Grange Ins. Co. v. Brosseau*, 113 Wn.2d 91, 93-94 (1989)). However, insurance

contracts obtained by omitting material facts in the application are void *ab initio*. *Aluminum Co. of America v. Aetna Cas. & Sur. Co.*, 140 Wn.2d 517, 528 (2000).

In this case, the Hellicksons argue that "Tudor's bad faith breach of the duty to defend bars it from obtaining rescission after the fact." Dkt. 40 at 24. The flaw in the Hellicksons' argument is that they are precluded from deriving any benefit from a contract that is deemed to be void from the beginning. The duty to defend is a benefit of an insurance contract and the instant contract was void as of its formation. Therefore, the Court grants Tudor's motion on this issue and dismisses Hellicksons' breach of contract counterclaim.

### 4. Bad Faith and CPA

In Washington, bad faith and CPA claims may still lie even in the absence of coverage under an insurance policy. *Tornetta v. Allstate Ins. Co.*, 94 Wn. App. 803, 810 (1999). However, an insured that perpetrates a fraud upon the insurer is precluded from pursuing either a bad faith or CPA claim. *Id.* "An insured's fraud is dispositive in such a case." *Id.*

In this case, the Hellicksons' misrepresentation and concealment of material facts is dispositive. Therefore, the Court grants Tudor's motion on these issues and dismisses the Hellicksons' counterclaims for bad faith and a violation of the CPA.

### 5. Unfair Claims Settlement Practices

The Hellicksons allege that Tudor violated numerous provisions of Washington's Unfair Claims Settlement Practices Regulation, WAC 284-30-300 to -450. Dkt. 40 at 13-15. The purpose of the regulations "is to define certain minimum standards which, if violated with such frequency as to indicate a general business practice, will be deemed to constitute unfair claims settlement practices." WAC 284-30-300. "Violations of the standards for unfair claims settlement practices in this regulation are subject to the enforcement provisions" of Washington's Insurance Fair Conduct Act ("IFCA"), RCW

Chapter 48.30. WAC 284-30-400. Committing a violation of "any one of these acts or practices constitutes a per se unfair trade practice." *Dombrosky v. Farmers Ins. Co. of Washington*, 84 Wn. App. 245, *as amended, review denied* 131 Wn.2d 1018 (1996).

In this case, the Hellicksons assert that Tudor failed to comply with the unfair claims settlement practices regulations on several occasions. Dkt. 40 at 13-15. While Tudor acknowledges at least one failure to comply with a regulation (Dkt. 43 at 7 n. 5), it argues that the violation was "nothing more than a technical error that does not entitle [the Hellicksons] to any damages." *Id*. The Court agrees with Tudor to the extent that the Hellicksons are not entitled to any damages or to pursue this cause of action because an insured's fraud is dispositive on a claim for an unfair trade practice. *Tornetta*, 94 Wn. App. at 810. Therefore, the Court grants Tudor's motion on this issue and dismisses the Hellicksons' counterclaims for violations of the unfair settlement practices regulations.

## IV. ORDER

Therefore, it is hereby

**ORDERED** that the Hellicksons' motion for summary judgment (Dkt. 32) and motion to strike (Dkt. 39) are **DENIED**, Tudor's cross-motion for summary judgment (Dkt. 36) is **GRANTED**, and the Hellicksons' counterclaims are **DISMISSED**. The Clerk shall enter judgment for Tudor and close this action.

DATED this 29th day of August, 2011.

BENJAMIN H. SETTLE
United States District Judge

ORDER - 12